United States District Court

Northern District Of California

Before The Honorable Susan Illston

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 10-498 SI |
| ) | |
| Hannstar Display ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

San Francisco, California
Friday, July 30, 2010

**Reporter's Transcript of Proceedings**

**Appearances:**

For Plaintiff:        Joseph P. Russoniello
United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California  94102
By:  **Heather Tewksbury, Esquire**
**Assistant United States Attorney**

For Defendant:      K & L Gates, LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington  98104
By:  **Hugh F. Bangasser, Esquire**

Also Present:       Tina Hsiu Chiao Lin
General Counsel and Vice President
Hannstar Display Corporation
(Corporate representative on
behalf of defendant.)

**Reported By:**      *Sahar McVickar, RPR*, CSR 12963
*Official Reporter, U.S. District Court*
*for the Northern District of California*

(Computerized Transcription by Eclipse)

| | |
|---|---|
| 1 | **Friday**, **July** **30**, **2010**                    **11:00 A.M.** |

2                P R O C E E D I N G S

3           **THE CLERK:**  Calling criminal 10-498, United States

4 versus Hannstar display.

5           **MS. TEWKSBURY:**  Good morning, Your Honor.

6           Heather Tewksbury on behalf of the United States.

7           **THE COURT:**  Good morning.

8           **MS. TEWKSBURY:**  Hannstar's counsel and corporate

9 representative are currently coming to the podium.

10           **MR. PANGASSER:**  Good morning, Your Honor.

11           Your Honor, I'm Hugh Bangasser for K & L Gates on

12 behalf of Hannstar Display Corporation.

13           And with me this morning is Tina Hsiu Chiao Lin,

14 otherwise customarily referred to as Ms. Lin.  She is the

15 general counsel, Your Honor, and corporate vice president of

16 Hannstar Display Corporation.

17           **THE COURT:**  Good morning.

18           And you don't need an interpreter?

19           **MS. LIN:**  No.

20           **THE COURT:**  Okay.  Say again Ms. Lin's title.

21           **MR. PANGASSER:**  She is the corporate -- she is the

22 corporate vice president, and she is the general counsel of

23 Hannstar Display Corporation, Your Honor.

24           **THE COURT:**  Okay.

25           I have been provided with a stipulated order for

1   expediting sentencing and with a joint sentencing memo and

2   request for expedited sentencing and a copy of a proposed Rule

3   11(c)(1)(c) plea agreement.

4           And it's my understanding what you would like to do

5   is go ahead, take the plea, and proceed immediately to

6   sentencing.

7           **MS. TEWKSBURY:**  That's correct, Your Honor.

8           **MR. PANGASSER:**  That's correct.

9           **MS. TEWKSBURY:**  And if I could hand you the original

10  plea agreement, please?

11          Your Honor, the plea agreement includes the separate

12  board resolution at the back authorizing --

13          **THE COURT:**  Separate?

14          **MS. TEWKSBURY:**  -- authorizing Ms. Lin to appear.

15          **THE COURT:**  Okay, Ms. Lin, I understand from the

16  lawyers that you would like to enter a plea on behalf of

17  Hannstar Display Corporation today; is that right?

18          **MS. LIN:**  Yes, Your Honor.

19          **THE COURT:**  Okay.

20          Before we proceed further, I need for you to -- I

21  need Tracy to swear you to tell the truth, please.

22          **MS. LIN:**  Yes.

23          **MR. PANGASSER:**  Your Honor, if I just may, just to

24  clarify for -- this is a change of plea.  The corporation

25  entered a plea this morning.

1          **THE COURT:**  All right.

2          So it would be a change of plea; is that right,

3  Ms. Lin?

4          **MS. LIN:**  Yes.

5          **THE COURT:**  Okay.

6          **MS. LIN:**  Yes, Your Honor.

7          **THE COURT:**  And I have been handed a document called

8  "Plea Agreement," stamped "original" on the top.  And the last

9  page of that is a Hannstar Display Corporation document titled,

10  "Board Resolutions," which appears to reflect a resolution that

11  Ms. Tina Hsiu Chiao Lin, vice president and general counsel at

12  Hannstar, is authorized, empowered, and directed to execute and

13  deliver the plea agreement in the name of and on behalf of

14  Hannstar.

15          Is that your understanding, too, Ms. Lin?

16          **MS. LIN:**  Yes, Your Honor.

17          **THE COURT:**  Okay.

18          Were you present at the board meeting?

19          **MS. LIN:**  Yes.

20          **THE COURT:**  Okay.

21          So as to you, Ms. Lin, have you taken any drugs,

22  medicines, pills, or drunk any alcoholic beverages in the last

23  24 hours?

24          **MS. LIN:**  No, Your Honor.

25          **THE COURT:**  Okay.

```
 1              And you're able to speak English fine, yes?

 2         MS. LIN:  Yes.

 3         THE COURT:  Okay.

 4              Do you understand and does Hannstar understand that

 5    it has the right to be represented by counsel at all stages of

 6    these proceedings, including trial, if it wishes to take these

 7    matters to trial?  Do you understand that?

 8         MS. LIN:  Yes, Your Honor.

 9         THE COURT:  And do you understand that in the United

10    States, a lawyer will be provided for a criminal defendant if

11    it can't afford to pay for a lawyer?  Do you understand that?

12         MS. LIN:  Yes, Your Honor.

13         THE COURT:  And has Hannstar had enough time to talk

14    with its legal counsel about the charges that are pending

15    against it here?

16         MS. LIN:  Yes.

17         THE COURT:  Okay.  And are you satisfied with your

18    legal counsel's representation of the corporation?

19         MS. LIN:  Yes, Your Honor.

20         THE COURT:  Has Mr. Bangasser -- did I say that

21    right?

22         MR. PANGASSER:  That's all right, Your Honor, I'm

23    used to it.  Bangasser, Your Honor.

24         THE COURT:  Bangasser.

25              Did Mr. Bangasser explain to you and to the company
```

```
 1   what the Government -- what the United States Government would
 2   have to prove before you could be convicted of these charges?
 3              MS. LIN:  Yes, Your Honor.
 4              THE COURT:  All right.
 5              Ms. Tewksbury, can you summarize for me and for
 6   Ms. Lin, the elements of the offense she's proposing to plead
 7   to?
 8              MS. TEWKSBURY:  Yes, Your Honor.
 9              Hannstar is charged by information with one count of
10   violating section 1 of the Sherman Act 15 U.S.C. § 1.  To
11   establish such a violation, the United States must prove beyond
12   a reasonable doubt that the defendant entered into a
13   conspiracy; the conspiracy was in an unreasonable restraint of
14   trade; and the conspiracy affected interstate commerce in the
15   United States.
16              THE COURT:  Do you understand those are the elements
17   of this offense?
18              MS. LIN:  Yes, Your Honor.
19              THE COURT:  And do understand that the maximum
20   punishment for this offense would be a maximum fine in an
21   amount equal to the greatest of $100 million or twice the gross
22   pecuniary gain the conspirators derived from the crime or twice
23   the gross pecuniary loss caused to the victims of the crime by
24   the conspirators?  Do you understand that part?
25              MS. LIN:  Yes, Your Honor.
```

1    **THE COURT:** And in addition, the Court may impose a

2    term of probation of at least one year, but not more than five

3    years, and may order that the corporation pay restitution to

4    the victims of the offense and may order, and indeed, shall

5    order, that a $400 special assessment shall be made.

6         Do you understand those things?

7    **MS. LIN:** Yes, Your Honor.

8    **THE COURT:** Do you understand that under the

9    constitution and laws of the United States, the corporation has

10   the right to plead not guilty to these charges, and if it

11   pleads not guilty, it will be presumed innocent of the charges

12   unless and until the Government proves beyond a reasonable

13   doubt that it's guilty of every element of this offense?

14        Do you understand that?

15   **MS. LIN:** Yes, Your Honor.

16   **THE COURT:** And the corporation has a right to have

17   these matters heard by a jury. And if it chooses to have a

18   jury trial, it could not be convicted unless all 12 jurors

19   unanimously agree that the corporation is guilty beyond a

20   reasonable doubt of every element of this offense.

21        Do you understand that?

22   **MS. LIN:** Yes, Your Honor.

23   **THE COURT:** And it would be up to the Government to

24   call witnesses to testify in the presence of the defendant and

25   put on other evidence, all to prove up every element of this

1   offense.

2           Do you understand that?

3           **MS. LIN:**  Yes, Your Honor.

4           **THE COURT:**  And Hannstar's lawyers would have the

5   opportunity to challenge the Government's evidence, and

6   cross-examine the Government's witnesses.

7           Do you understand that?

8           **MS. LIN:**  Yes, Your Honor.

9           **THE COURT:**  And your lawyers would have the right to

10  call witnesses on your behalf to tell your side of the story.

11          Do you understand that?

12          **MS. LIN:**  Yes, Your Honor.

13          **THE COURT:**  And if you plead guilty here, you give

14  up all these trial rights, the right to put the Government to

15  its proof, the right to confront the witnesses, and the company

16  will be found guilty because you, on its behalf, will admit

17  here in open court that it's guilty.

18          Do you understand that?

19          **MS. LIN:**  Yes, Your Honor.

20          **THE COURT:**  And if you plead guilty, you can't

21  appeal from a finding of guilt because the corporation will

22  have admitted it.

23          Do you understand that?

24          **MS. LIN:**  Yes, Your Honor.

25          **THE COURT:**  And we'll talk about the plea agreement

```
1    in a moment, but if I accept the plea agreement, the company
2    will also give up its right to appeal from...
3              MS. TEWKSBURY:  Paragraph 2, Your Honor.
4              THE COURT:  Where?  Two?
5              MS. TEWKSBURY:  Yeah, 2.
6              THE COURT:  File any appeal from the orders the
7    Court may have made, from the sentence the Court may impose,
8    any collateral attack, such as a petition for a writ of habeas
9    corpus against anything that has happened here, with the
10   exception of a claim that your lawyers were ineffective.
11             Do you understand that?
12             MS. LIN:  Yes, Your Honor.
13             THE COURT:  Or you don't give up a claim of
14   prosecutorial misconduct.
15             Do you understand that?
16             MS. LIN:  Yes, Your Honor.
17             THE COURT:  As I mentioned a moment ago, I've been
18   handed a -- well, first let me ask you:  Has anybody threatened
19   you or forced you to enter this guilty plea?
20             MS. LIN:  No, Your Honor.
21             THE COURT:  To your knowledge, did anyone threaten
22   the corporation in any way to make you enter this guilty plea?
23             MS. LIN:  No, Your Honor.
24             THE COURT:  Okay.
25             I'm holding a document called "Plea Agreement."  On
```

```
 1   page 15 of this agreement, there is a signature line for

 2   Tina Hsiu Chiao Lin, and there is a signature; did you sign

 3   that, ma'am?

 4              MS. LIN:  Yes, Your Honor.

 5              THE COURT:  Had you read this document before you

 6   signed it?

 7              MS. LIN:  Yes, Your Honor.

 8              THE COURT:  And had you received authorization from

 9   your corporation to sign this document on its behalf before you

10   signed it?

11              MS. LIN:  Yes, Your Honor.

12              THE COURT:  Do you understand what's in here?

13              MS. LIN:  Yes, Your Honor.

14              THE COURT:  And do you agree with it?

15              MS. LIN:  Yes, Your Honor.

16              THE COURT:  Okay.

17              Mr. Bangasser, can you summarize for me and for

18   Ms. Lin the general terms of this plea agreement?

19              MR. PANGASSER:  Yes, Your Honor.

20              Your Honor, the principal paragraphs of the plea

21   agreement include, essentially, that this is a plea agreement

22   pursuant to Federal Rule of -- excuse me, Rules of Criminal

23   Procedure, Rule 11(c)(1)(c), and that in paragraph 3, Hannstar

24   sets forth in the agreement that Hannstar will agree to plead

25   guilty to a single count of violating section 1 of the Sherman
```

1    Act, as set forth in paragraph 2 of the plea agreement.

2              In paragraph 4, as Ms. Tewksbury will describe,

3    there is the factual basis for that.

4              In paragraph 8, it sets forth the sentencing

5    agreement, which provides for Hannstar's payment of a criminal

6    fine of $30 million, installments as follows:

7              In 8(a), an initial payment within 30 days of

8    $5 million, and subsequent payments, for a total of

9    $30 million, over the next five anniversaries.

10             Further, that the defendant will pay the $400

11   assessment.  There is a recommendation of both parties that no

12   restitution nor terms of probation present here.

13             Paragraph 12 goes on to describe, Your Honor, the

14   obligations of Hannstar to cooperate pursuant to this plea

15   agreement.  In paragraph 12:  The defendant will cooperate

16   fully and truthfully in the prosecution of this case and in the

17   current federal investigation.  It will produce documents in

18   the United States, including foreign nonprivilege-located

19   documents.

20             It will use its best efforts to secure ongoing,

21   full, and truthful cooperation of both current and former

22   employees, officers, and directors.  And it will make those

23   individuals available, if so requested by the U.S. Government

24   in the United States or in other mutually agreed locations, for

25   interviews or provision of testimony in subsequent matters.

 1          Paragraph 13 sets forth the obligation of

 2    cooperation of individuals.

 3          Paragraph 14 sets forth the agreement that is

 4    subject to the plea agreement and the imposition of the

 5    recommended sentence.  And subject to our cooperation

 6    obligations, the Government will not bring further charges

 7    against Hannstar.

 8          Paragraph 15 sets forth the nonprosecution of

 9    individuals for any act or offense undertaken in furtherance of

10    the antitrust conspiracy involving the manufacture or sale of

11    TFT-LCD panels in the U.S. or elsewhere.  That nonprosecution

12    agreement will not apply to individuals.

13          And those are the principal provisions, Your Honor.

14    I believe, of the plea agreement.

15          *THE COURT:*  What's the situation with respect to the

16    two individuals?

17          *MR. PANGASSER:*  The two individuals have not as of

18    this time been charged, Your Honor, by the Government.

19          *MS. TEWKSBURY:*  They are carved out of our plea

20    agreement.  And there is an investigation ongoing as to those

21    two individuals.

22          *THE COURT:*  I see, okay.

23          Is that about right, Ms. Tewksbury?

24          *MS. TEWKSBURY:*  Yes, those terms are correct.

25          *THE COURT:*  Is that what you understood the

1   arrangement to be, Ms. Lin?

2           **MS. LIN:**  Yes, Your Honor.

3           **THE COURT:**  Okay.

4           Ms. Tewksbury, can you summarize for me and Ms. Lin

5   what the Government would be prepared to prove if this matter

6   went to trial.

7           **MS. TEWKSBURY:**  Yes, Your Honor.

8           Had this case gone to trial, the United States would

9   have presented evidence sufficient to prove the following

10  facts:

11          For purposes of this plea agreement, the relevant

12  period is that period from on or about September 14th, 2001, to

13  on or about January 31st, 2006.  During the relevant period,

14  Hannstar Display Corporation, Hannstar, a corporation

15  organizing and existing under the laws of Taiwan, sold computer

16  notebook and monitor TFT-LCD into various markets, including

17  the United States.

18          The defendant has its headquarters and principal

19  place of business in Taipei, Taiwan.  During the relevant

20  period, the defendant was a producer of computer notebook and

21  monitors, TFT-LCD, was engaged in the sale of computer notebook

22  and monitor TFT-LCD in the United States and elsewhere, and

23  employed between 1,000 and 5,000 individuals.

24          TFT-LCD are glass panels composed of an array of

25  tiny pixels that are electronically manipulated in order to

1    display images.  TFT-LCD are manufactured by various producers

2    in a broad range of sizes and specifications for use in

3    televisions, notebook computers, desktop monitors, mobile

4    devices, and other applications.

5              During the relevant period, the defendant, through

6    its officers and employees, including high-level personnel of

7    the defendant, participated in a conspiracy with major TFT-LCD

8    producers, the primary purpose of which was to fix the price of

9    certain TFT-LCDs sold in the United States and elsewhere.

10             In furtherance of the conspiracy, the defendant,

11   through its officers and employees, engaged in discussions and

12   attended meetings including, group meetings referred to by some

13   of the participants as "crystal meetings" with representatives

14   of other TFT-LCD producers.

15             During these discussions and meetings, agreements

16   were reached to fix the price of certain TFT-LCD to be sold in

17   the United States and elsewhere.

18             During the relevant period, sales of TFT-LCD by the

19   defendant that affected U.S. customers totaled $107 million.

20             During the relevant period, TFT-LCD sold by one or

21   more of the conspirator firms and equipment and supplies used

22   in the production and distribution of TFT-LCD, as well as

23   payments made for TFT-LCD, traveled in interstate and foreign

24   commerce.  Certain business activities of the defendant and its

25   co-conspirators in connection with the production and sale of

1   TFT-LCD affected by this conspiracy were within the flow of and

2   substantially affected interstate and foreign commerce.

3          Acts in furtherance of this conspiracy were carried

4   out within the Northern District of California.  TFT-LCD

5   affected by this conspiracy were sold by one or more of the

6   conspirators to customers in this district.

7          **THE COURT:**  Where in this paragraph do you set out

8   the affected commerce?

9          **MS. TEWKSBURY:**  It is actually in the joint

10  stipulated memorandum.

11         **THE COURT:**  So it's --

12         **MS. TEWKSBURY:**  It's not in the plea agreement.

13         **THE COURT:**  How do you -- how do you arrive at that

14  number?

15         **MS. TEWKSBURY:**  As we advised Your Honor during the

16  plea of LG Display, the United States uses a -- used a

17  three-category of volume of commerce determination to determine

18  affected U.S. sales.  And if you would like, I can go through

19  those categories --

20         **THE COURT:**  Yeah, refresh me.

21         **MS. TEWKSBURY:**  -- again.

22         For purposes of the plea negotiation for all of the

23  companies that have been before Your Honor, we have used a

24  three categories of commerce to determine the affected U.S.

25  commerce under the Sentencing Guidelines, and that includes

1   TFT-LCD sales by the defendant that were directly shipped into

2   the United States; TFT sales by the defendant were directly

3   billed or invoiced to customers within the United States; and

4   the third category covers sales of TFT-LCD by Hannstar, or the

5   defendant, that did not fall into the first two categories but

6   that were purchased by U.S. based companies outside the U.S.

7   and ended up in products sold into the United States.

8           **THE COURT:**  All right, thank you.

9           Mr. Bangasser, do you agree the Government is in a

10  position to put on proof as outlined by Ms. Tewksbury?

11          **MR. PANGASSER:**  Yes, Your Honor.

12          **THE COURT:**  All right.

13          Ms. Lin, did you hear what Ms. Tewksbury said?

14          Come back to the mic.

15          **MS. LIN:**  Yes, Your Honor.

16          **THE COURT:**  Are those things true?

17          **MS. LIN:**  Yes, Your Honor.

18          **THE COURT:**  Have you carefully reviewed the

19  information set out at paragraph 4 of this plea agreement?

20          **MS. LIN:**  Yes, Your Honor.

21          **THE COURT:**  And do you admit that everything in

22  there is true?

23          **MS. LIN:**  Yes, Your Honor.

24          **THE COURT:**  And you further admit that for these

25  purposes, the amount of affected commerce is $107 million?

1        **MS. LIN:**  Yes, Your Honor.

2        **THE COURT:**  Okay.

3        Is there anything else you would like me to inquire,

4   Ms. Tewksbury?

5        **MS. TEWKSBURY:**  No, Your Honor.

6        **THE COURT:**  All right.

7        Well, I find that there is a factual basis for this

8   plea of guilty, that the defendant, Hannstar Display

9   Corporation, is guilty of these charges, and that this plea is

10  being freely and voluntarily given.

11       So Tracy, would you take defendant's plea to the, I

12  guess, Information.

13       **THE CLERK:**  The United States Attorney has filed an

14  Information charging Hannstar Display Corporation of a

15  violation of Title 15, United States Code Section 1, which is

16  price fixing.

17       How does Hannstar Display Corporation wish to plead

18  to the single-count Information, guilty or not guilty?

19       **MS. LIN:**  Guilty.

20       **THE COURT:**  All right, thank you.  Well, I'll accept

21  that plea of guilty.

22       Now, I understand from the lawyers that you would

23  like to proceed to sentencing at this time; is that right?

24       **MS. LIN:**  Yes, Your Honor.

25       **THE COURT:**  And have the lawyers explained to you,

1    and have you shared with your board the fact that normally

2    after a defendant is found guilty, a report is prepared

3    reviewing the situation, reviewing the defendant, and advising

4    me, on the factors that might affect the sentence in the case?

5            It usually takes a month or two for this report to

6    be prepared.  The defendant would see the report, the

7    Government would, I would.  And we would generally come back in

8    a couple of months, and we would do the sentence then.

9            So what your lawyer is suggesting and the Government

10   is suggesting is that we skip that step, that we go directly to

11   sentencing.  And they have said that they believe there is

12   enough information available to me on the record, as it exists,

13   to do an intelligent sentencing decision.  And I agree with

14   that, I think I can, but I want to make sure that you

15   understand we are skipping that step.

16           And is that your request, is that we go ahead right

17   now?

18           **MS. LIN:**  Yes, Your Honor.

19           **THE COURT:**  Okay.

20           Well, I do find there is enough information in the

21   record to allow the Court to make an informed sentencing

22   decision, so I'll go ahead and do that today.

23           The corporation has now been convicted of one count

24   of 15 U.S.C. § 1, conspiracy in restraint of trade.  The

25   conviction was taken today.  The plea agreement is under Rule

1    11(c)(1)(c).  I currently accept that plea agreement as an

2    appropriate disposition of this matter.

3            I have read and reviewed the plea agreement and the

4    joint sentencing memorandum requesting expedited sentencing

5    under Local Rule 32-1(b) and the stipulation to that effect.

6            I find that the applicable guideline calculation is

7    as follows:

8            Based on $107 million of affected commerce under the

9    2(r)1.1 guidelines, the base fine is 20 percent of

10   $107 million, which would be $21.4 million.  The culpability

11   score is calculated as follows:

12           The base score under 8(c)2.5(a) is 5.  Because of

13   the defendant's involvement in or tolerance of criminal

14   activity, having a thousand or more employees under

15   8(c)2.5(b)1, 4 points are added.  Zero points are added for

16   prior history under 8(c)2.5(c); for violation of order under

17   8(c)2.4(d); for obstruction of justice, under 8(c) -- oh, was

18   that 2.5(d)?

19           **MS. TEWKSBURY:**  Yes, Your Honor.

20           **THE COURT:**  2.5(d) for violation of obstruction of

21   justice under 8(c)2.5(e); and zero points for an effective

22   program to prevent and detect violations of law under

23   8(c)2.5(f).  However, two points are subtracted for

24   self-reporting, cooperation, and acceptance of responsibility

25   under 8(c)2.5(g)2, all of which yields a culpability score of

7.

          The minimum and maximum multipliers under 8(c)2.6
are 1.4 to 2.8.  The minimum and maximum fines would therefore
be 29.9 million to 59.9 million.  The plea agreement under
11(c)(1)(c) is for $30 million, which is just above the low end
of that guideline range.  Under all the circumstances of this
case, I find that that's an appropriate sentence and that the
payment schedule set out in the plea agreement is appropriate
as well.

          And in addition, there would be a $400 special
assessment.  No restitution is requested to be ordered because
that defendant is in the MDL, and the joint statement is that
that could potentially permit recovery of a multiple of actual
damages for the victims, and therefore no restitution is
requested.  And that would be the sentence, and the Court
approves that and will order that.

          So having said all of that, did you wish to add
anything, Mr. Bangasser?

          **MR. PANGASSER:**  No, Your Honor.

          **THE COURT:**  Ms. Tewksbury?

          **MS. TEWKSBURY:**  No, Your Honor.

          **THE COURT:**  Ms. Lin, did you want to say anything
before I impose sentence?

          **MS. LIN:**  No, Your Honor.

          **THE COURT:**  All right.

1          Pursuant to the Sentencing Reform Act of 1984, I

2   hereby impose the following sentence:

3          A fine of $30 million, payable in installments as

4   follows with interest accruing:  Within 30 days of today, which

5   would be by August 29th, 2010, a fine of $5 million plus

6   accrued interest -- a payment of $5 million plus accrued

7   interest.  At the one year anniversary of sentencing, which

8   would be July 30th, 2011, another payment of $5 million plus

9   interest.  On the third -- the second anniversary, which would

10  be July 30th, 2012, another payment of $5 million plus

11  interest.

12         On the third anniversary, or July 30th, 2013 another

13  $5 million payment plus interest.  On the fourth year

14  anniversary, or July 30th, 2014, another $5 million payment

15  plus interest.  And on the fifth year anniversary, or

16  July 30th, 2015, a final $5 million payment plus interest,

17  provided that the defendant may prepay the balance at any time

18  plus accrued interest.  In addition a $400 special assessment

19  is ordered, which is due immediately.

20              **THE CLERK:**  Are you going to pay that today?

21                  **(Defense counsel hands check forward.)**

22              **THE CLERK:**  Let me give you a piece of paper.

23              I'll take it to the Clerk's Office.  Okay, so $400.

24              **THE COURT:**  Is there anything else we need to do

25  today?

1        **MR. PANGASSER:**  Not that I'm aware of.

2        **MS. TEWKSBURY:**  No, Your Honor.

3        **THE COURT:**  All right.  Thank you.

4        **MR. PANGASSER:**  Thank you very much.

5                    **(Proceedings adjourned at 12:36 p.m.)**

6

7                          **---o0o---**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF REPORTER</u>

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


<u>/s/ Sahar McVickar</u>

Sahar McVickar, RPR, CSR No. 12963

Friday, August 13, 2010